```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOANNA FAN,                                   :
                                              :
                          Petitioner,         :
                                              :          MEMORANDUM & ORDER
              -against-                       :            15-cv-4169 (DLI)
                                              :
UNITED STATES,                                :
                                              :
                          Respondent.         :
----------------------------------------------------------------x
```
**DORA L. IRIZARRY, Chief United States District Judge:**

On August 20, 2015, Petitioner Joanna Fan ("Petitioner" or "Fan") filed a revised petition[1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 seeking *vacatur* of her conviction, sentence, forfeiture, and restitution. *See*, Rev. Mot. to Vacate, Set Aside or Correct Sent. ("Petition"), Dkt. Entry No. 4. The Court permitted limited discovery and, as part of that discovery, on June 1, 2016, "So Ordered" Petitioner's *ex parte* subpoena directed to Jeffrey Prieto, General Counsel of the U.S. Department of Agriculture ("USDA"). *See*, Mem. of Law in Supp. of the Gov't Mot. to Quash the Pet.'s Req. for Additional Disc. ("Mot. to Quash"), Dkt. Entry No. 30 at Ex. A ("Subpoena"). Upon receipt of the Subpoena, the Office of the USDA Inspector General contacted the U.S. Attorney's Office and requested that certain material be withheld as privileged. *Id*. at 2.

On July 1, 2016, in accordance with the Court's directive, the Government submitted non-privileged documents to the Court. *See*, Jun. 29, 2016 Minute Entry; *see also*, Mot. to Quash at 2. On July 21, 2016, the Government provided the Court with material it believed to be privileged, along with a Declaration from Phyllis K. Fong, the USDA Inspector General, explaining the assertion of privilege. *See*, *Ex Parte* Ltr. Containing Priv. Mat. for the Court's Rev., Dkt. Entry

---

[1] The docket number for the original criminal case, *United States v. Fan*, is 12-CR-68. The original petition in this matter was filed on July 16, 2015. *See*, Mot. to Vacate, Set Aside or Correct Sent., Dkt. Entry No. 1.

No. 26. At a status conference on August 19, 2016, the Court requested additional briefing as to whether the Court should provide the allegedly privileged materials to Fan. The Government filed its Motion to Quash on September 19, 2016. *See*, Mot. to Quash. Petitioner filed her opposition on September 23, 2016. *See*, Mem. of Law in Opp. to the Gov't Mot. to Quash Pet.'s Subpoena to the U.S. Dep't of Agric. ("Opp. Br."), Dkt. Entry No. 33. The Government filed its reply on September 30, 2016. *See*, Reply Mem. of Law in Supp. of the Gov't Mot. to Quash the Pet.'s Req. for Additional Disc. ("Gov't Rep."), Dkt. Entry No. 35. The submissions were filed under seal. *See*, Aug. 19, 2016 Minute Entry.

On the record at a conference on October 21, 2016, the Court denied the Government's Motion to Quash as moot or, in the alternative, granted, with this Memorandum & Order to follow. *See*, Oct. 21, 2016 Minute Entry.

### DISCUSSION[2]

The Government advances two general arguments in its Motion to Quash: (1) the documents sought are protected by the Informer's Privilege; and/or (2) Fan has not established the "good cause" necessary to permit discovery under Rule 6(a) in proceedings under 28 U.S.C. § 2255. *See*, *generally*, Mot. to Quash. In response, Fan argues that: (1) the identity of the Confidential Informant ("CI") has been waived; and/or (2) the information sought is material to her claim for ineffective assistance of counsel. *See*, *generally*, Opp. Br.

In evaluating the parties' arguments, this Court possesses "broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Repub. of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012) (internal citations omitted). Indeed, under controlling Second Circuit

---

[2] The Court issues this Memorandum & Order ("Decision") for the benefit of the parties and assumes the parties' familiarity with the underlying facts. Furthermore, the Court notes that the Decision does not take a position on the actual identity of the Confidential Informant.

precedent, "motions to quash a subpoena are . . . entrusted to the sound discretion of the district court." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal citations and quotation marks omitted).

### A. THE MOTION IS MOOT

In her opposition to the Government's motion, Fan claimed that she did not seek Li Chen's statements regarding her own offense of conviction, but rather, information concerning Li Chen's credibility. In pertinent part, she explained:

> At the outset we note that the Government appears to misunderstand what information is subject to the USDA [S]ubpoena, and as a result the Government frames its objections in the entirely wrong – and inapplicable – context. The Government appears to believe that we are seeking to obtain Li Chen's statements relating to Ms. Fan's alleged offense. Such is simply not the case. *We do not seek Li Chen's statements implicating Ms. Fan. Instead, we seek evidence of the USDA's investigation, if any, of Li Chen, related to Ms. Fan's allegation* that Li Chen had committed, <u>inter alia</u>, immigration fraud.

Opp. Br. at 6 (italics added, underline in original).

The Subpoena was not so narrowly tailored. The subpoena sought the production of "any records . . . relating to any investigation, action, determination, promises, cooperation agreements or other communications made . . . to an individual known as Li Chen." Mot. to Quash at Ex. A, ¶ 4. In response to Fan's representations narrowing the Subpoena, the Government stated that it could "represent that it does not have any documents that are responsive to the [S]ubpoena[.] [O]n information and belief, the [G]overnment did not conduct any independent inquiry into the allegations made by [Fan] against Chen and the Court thus need not provide [Fan] with anything further." Gov't Rep. at 2-3. The Court agrees.

Since Fan narrowed her request to documents pertaining to any investigations into her own criminal accusations against Li Chen, and the Government represents that it does not have any

3

responsive documents because no such investigation was performed, the Motion to Quash is denied as moot.

## B. THE INFORMER'S PRIVILEGE HAS NOT BEEN WAIVED

Even if the Motion to Quash were not denied as moot, the Court finds in the alternative, that the Informer's Privilege was not waived through disclosure.

The Informer's Privilege allows the Government to maintain the anonymity of sources as it "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Rovario v. United States*, 353 U.S. 53, 59 (1957). This protection is limited by its purpose and, if "the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged." *Id*. at 60. "By withholding the identity of the informer, the government profits in that the continued value of informants placed in strategic positions is protected, and other persons are encouraged to cooperate in the administration of justice." *In re United States*, 565 F.2d 19, 22 (2d Cir. 1977) (internal citations and quotation marks omitted). Although the name might be misleading, "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Rovario*, 353 U.S. at 59 (internal citations omitted). However, "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." *Id*. at 60.

While the parties do not dispute that the Informer's Privilege properly applies to the CI in this case, the parties disagree as to whether the CI's identity has been disclosed. Fan has advanced three grounds in support of its claim that the CI's identity has been disclosed. Each is unavailing.

Fan first contends that she has deduced the CI's identity from an unsigned letter outlining criminal allegations against her. Opp. Br. at 4. However, this argument is not premised on disclosure. It is premised upon belief or conjecture that Li Chen was the CI. To arrive at Fan's conclusion, one must extrapolate that the number "4" in the unknown author's contact e-mail address means "dead" in Chinese, that "44" must mean something doubly malicious, and that this intent and import can only identify Li Chen. *See*, Petition at Ex. A, ¶¶ 20-21. Even assuming, *arguendo*, that this is true and Fan successfully deduced the CI's identity, conjecture and deduction do not constitute disclosure, but rather requires affirmative disclosure by the informant or the government. *See*, *State of N.Y. v. Cedar Park Concrete Corp.*, 130 F.R.D. 16, 21 (S.D.N.Y. 1990) ("Accordingly, the privilege disappears if either the informer or the government has disclosed the informer's identity.") (internal citations omitted); *See also*, *United States v. Connor*, No. 15-CR-296 (HSG), 2015 WL 8482205, at *4 (N.D. Cal. Dec. 10, 2015) ("In this context, the [G]overnment must affirmatively inform a defendant of an informant's identity to effect a qualifying disclosure.").

Fan's second argument asks the Court to find that, since the Government has never taken a position on Fan's supposition that Li Chen was the CI, it tacitly has conceded the issue. Opp. Br. at 4-5. To agree with such an argument, would place an affirmative duty on the Government to respond to conjectures about the identity of CIs, thereby reducing the "privilege" into one easily eradicated by parties through the process of elimination. This would defeat the very point of having a privilege. Indeed, the Northern District of California succinctly outlined the inherent flaw in finding disclosure based on the Government's silence:

> Any time the defendant guessed correctly, the government would be placed in a Catch-22 that would render its privilege meaningless: the government would either have to disclose that Defendant was

5

> correct and waive the privilege or remain silent and forfeit disclosure, thereby requiring disclosure.

*United States v. Connor*, 2015 WL 8482205, at *4.

Fan's third and final contention is that LI Chen was identified as the CI in a memorandum by the Office of the Special Commissioner of Investigation for the New York City School District ("SCI Memo"). Opp. Br. at 5 (citing Opp. Br. at Ex. 2). However, this document does not identify Li Chen as the CI. In pertinent part, the SCI Memo reads:

> [The AUSA] was aware that Fan may have attempted to cause problems with Li Chen of Apple Tree Day Care. [The AUSA] stated that Chen and her husband have been interviewed with regard to Red Apple Child Development and were cooperating with the investigation. [The AUSA] stated that Fan was a vindictive person and he did not put it past Fan to attempt to discredit Chen. [The AUSA] stated that he is aware of allegations made against Chen. [The AUSA] request copies of the documents given by Fan alleging fraudulent immigration documents by Chen and her husband Xiao Hong Dou.

Opp. Br. at Ex. 2. While the SCI Memo names Li Chen as somebody interviewed in connection with an investigation, it does not identify her as the CI. "Knowing the identity of persons who have given statements . . . is not the equivalent to knowledge of which of those persons were informers within the context of the privilege." *Martin v. Albany Bus. J., Inc.*, 780 F. Supp. 927, 941 (N.D.N.Y. 1992) (quoting *Hodgson v. Charles Martin Inspectors of Petrol., Inc.*, 459 F.2d 303, 306 (5th Cir. 1972)). The SCI Memo indicates that Li Chen interacted with authorities, nothing more. As such, this document does not support Fan's position.

Even if the SCI Memo did disclose the identity of the CI, the Court would not agree that a disclosure occurred, because the document appears to have been the product of a separate *ex parte* subpoena issued by the Court. *See*, *Ex Parte* Ltr. Req. Endorsement of Proposed Subpoena *Duces Tecum*, Dkt. Entry No. 16; *see also*, Mar. 30, 2016 Minute Entry. If that were the case and the

6

Court accepted Petitioner's argument, a local law enforcement[3] agency would be able to waive the Government's privilege by responding to an *ex parte* subpoena to which the Government was not privy and could not oppose.

C. **FAN HAS NOT ESTABLISHED "GOOD CAUSE"**

Even if the Court were to find that the Motion to Quash is not moot, the CI's identity was disclosed, and the Informer's Privilege waived, Fan still has failed to establish "good cause" for further discovery. Rule 6(a) of the § 2255 Rules specifies that a habeas petitioner is entitled to discovery only if the petitioner shows "good cause," and grants the Court discretion in making a discovery determination. 28 U.S.C. § 2255; *See also*, *United States v. Durrani*, 115 F. App'x 500, 502-03 (2d Cir. Nov. 23, 2004) (Summary Order). To evaluate whether a habeas petitioner has shown good cause, the Court looks for reasons to believe that the petitioner would be able to show she is entitled to relief "if the facts are fully developed." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (internal citations and quotation marks omitted). The Court retains authority to deny a request for discovery if a petitioner is simply engaging in a "fishing expedition" without showing specific facts that would support a habeas corpus petition. *Charles v. Artuz*, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998) (internal citations omitted).

In this case, since Fan is challenging her guilty plea by claiming ineffective assistance of counsel, "the two-part *Strickland v. Washington* test applies." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). In order to support her claim, Fan would have to show that: (1) her attorney's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) "[t]here is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and

---

[3] SPECIAL COMM'R OF INVESTIGATION FOR THE NEW YORK CITY SCH. DIST., http://www.nycsci.org/ (last visited Oct. 31, 2016) (noting the Commissioner's "broad authority to investigate fraud, misconduct, conflicts of interest, and other wrong doing within the New York City School District").

would have insisted on going to trial." *Id*. at 58-59 (internal citations omitted). With respect to her attorney's performance, Fan must show "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (internal citations omitted).

Accordingly, to be proper, any discovery must be focused on seeking information that, if fully developed, would support either prong of the *Strickland* test.

Reviewing the subpoena for good cause within the *Strickland* rubric, the Court finds that the information sought is nothing more than a fishing expedition. Fan's argument as to why she needs the information is summarized in the following sequence: **(1)** Fan believed that Li Chen would be the Government's primary witness against her at trial; **(2)** Fan accused Li Chen of committing crimes such as "immigration fraud;" **(3)** Fan's attorney in the criminal matter did not investigate her accusations against Li Chen; **(4)** an "independent investigation . . . has now confirmed" her accusations; **(5)** the decision by her former attorney *not* to investigate her allegations kept Fan from discovering that Li Chen's "credibility was easily assailable;" and **(6)** if Fan's former attorney had investigated, he would have known that the accusations were true and he would have been able to negotiate a better disposition or Fan would not have agreed to plead guilty. *See*, Opp. Br. at 6-8.

The chief problem with Fan's argument is that the Complaint, and later, the Presentence Investigation Report, outlined the evidence resulting from the independent investigations conducted by the Government in addition to statements given by Fan and her husband. *See*, Sealed Compl., Dkt. Entry No. 1; Sealed Presentence Investigation Rpt., Dkt. Entry No. 64.[4] The information was secured through "sources wholly independent of the informer," with no reason to

---

[4] These citations are to the docket in *United States v. Fan*, No. 12-CR-68.

believe that Li Chen (who has not definitively been established as the CI in this case), played any role beyond providing information to "set the independent investigation[s] in motion." *United States ex rel. Coffey v. Fay*, 344 F.2d 625, 632 (2d Cir. 1965) (internal citations omitted). On these facts, "the source of the information which caused [Petitioner] to be observed [is] unimportant to [her] defense." *Scher v. United States*, 305 U.S. 251, 254 (1938).

Fan was charged with misappropriating millions of dollars, which, according to her attorney at the time, "was patent and undeniable." Mot. to Quash at Ex. C, ¶ 2. Her counsel advised that "pleading was the only rational course, in view of the over-whelming evidence," and that in the absence of any viable defense, "matters would only get worse if she did not plead." *Id*. at ¶ 4. While Fan and her husband claimed the money was handled properly, her previous attorney states that there were no documents to support their claims and combat either the Government's evidence or their own admissions establishing a "whole siphoning-off" of funds. *Id*. at ¶¶ 7, 9-11.

It cannot reasonably be argued that the decision to ignore Fan's accusations about Li Chen's credibility was beyond the competence demanded of criminal defense attorneys. The truth of the accusations has no connection to any exculpatory evidence and does not seem to call the fruits of the underlying investigations into question. Simply put, the initial alleged informant's credibility was immaterial to the prosecution.

Furthermore, even if the Court believed that the informant's credibility mattered for the first prong of the *Strickland* analysis, Fan reasonably cannot argue that "new evidence" from an extrajudicial investigation about the truth of her accusations would have led her to insisting on a trial. Fan had levied the accusations against Li Chen before pleading guilty. Furthermore, when Fan pled guilty, she believed that: (1) Li Chen was guilty of the crimes of which Fan accused her; (2) Li Chen's credibility was questionable; and (3) Li Chen would be the primary witness against

her at trial. Since Fan truly believed the accusations she made against Li Chen, it does not follow that the results of an unofficial investigation "confirming" her beliefs would have led to a different outcome in her criminal case.

## **CONCLUSION**

For the reasons set forth above, the Government's Motion to Quash is DENIED as moot, or, in the alternative, GRANTED, as a result of the Informer's Privilege and Petitioner's failure to establish good cause under the § 2255 Rules.

SO ORDERED.

Dated: Brooklyn, New York
      June 17, 2019

                                           /s/
                                  DORA L. IRIZARRY
                                     Chief Judge